IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION


MICHAEL S. SMITH,                    )   CIVIL ACTION 4:05-1089-PMD-TER
                                     )
            Plaintiff,               )
                                     )
        v.                           )
                                     )REPORT AND RECOMMENDATION
JO ANNE B. BARNHART                  )
COMMISSIONER OF SOCIAL               )
SECURITY,                            )
                                     )
            Defendant.               )
_____    )


        This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended,

42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of

Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB).  The only issues

before the Court are whether the findings of fact are supported by substantial evidence and whether

proper legal standards have been applied. This case was referred to the undersigned for a report and

recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).


## I.  PROCEDURAL HISTORY

        The plaintiff, Michael S. Smith, filed applications for Disability Insurance Benefits (DIB)

on February 20, 2003, alleging disability since July 15, 2002, due to a back injury, which limited his

ability to bend, walk, stand and sit (Tr. 55, 67). His applications were denied initially (Tr. 29-32),

and upon reconsideration(Tr. 38-39).  Following a hearing on August 12, 2004 (Tr. 294-318), the

Administrative Law Judge (ALJ), Ronald Dickinson,  found, in a decision dated December 8, 2004,

that plaintiff was not disabled because he has retained the functional capacity (RFC) to perform a range of unskilled light work and could perform jobs existing in significant numbers in the national economy (Tr. 11-23). The Appeals Council denied plaintiff's request to review the ALJ's decision thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review under section 205(g) of the Act (Tr. 4-6).

## II.  FACTUAL BACKGROUND

The plaintiff, Michael S. Smith, was born on November 12, 1966 (Tr. 55), and was 37 years of age at the time of the ALJ's decision.  Plaintiff has a tenth grade education, and past relevant work as a factory worker, boat builder and plant manager (Tr. 68). Plaintiff last worked as a plant manager for Sea Fox Boats, overseeing the production of fishing boats. Before his manager position at Sea Fox, plaintiff had worked for Renken Boats for several years until it closed. Plaintiff was then offered a plant manager position by the owners of Sea Fox who were relatives of the owners of Renken and were familiar with plaintiff's work record. (Tr. 103). Plaintiff  held this position for approximately seven years when he was injured on the job. Plaintiff slipped off a scissor lift and fell from approximately seven feet in the air landing on the right side of his back on the concrete. (Tr. 305).

## III.  DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

(1)    The ALJ improperly discounted the opinions of claimant's treating physicians.

(2)    The ALJ conducted a flawed listing analysis.

-2-

(3)     The ALJ committed reversible error by failing to explain why he did not consider obesity an impairment, severe or not severe.

(4)     The ALJ constructed a faulty hypothesis in eliciting testimony from the vocational expert.

(5)     The ALJ conducted a flawed credibility analysis of the claimant.

(Plaintiff's memorandum).

In the decision of December 8, 2004, the ALJ found the following:

(1)     The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

(2)     The claimant has not engaged in any substantial gainful activity since his alleged onset of disability.

(3)     The claimant's chronic low back pain, right leg pain, generalized anxiety disorder, and depression are considered "severe" impairments in combination based on the requirements in the Regulations 20 CFR § 404.1520(c).

(4)     These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(5)     The undersigned finds the claimant's allegations regarding his limitations are not fully credible for the reasons set forth in the body of the decision.

(6)     The claimant has the residual functional capacity to perform light, unskilled work with restrictions.

(7)     The claimant is unable to perform any of his past relevant work (20 CFR §404.1565).

(8)     The claimant is a "younger individual between the ages of 45 and 49" (20 CFR § 404.1563).

(9)     The claimant has a "limited education" (20 CFR § 404.1564).

(10)    Transferability of skills is not an issue in this case (20 CFR § 404.1568).

(11)    The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 404.1567).

(12)    Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.17 as a framework for decision-making, and based on the testimony of the vocational expert, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as: a parking lot attendant (This is light, unskilled work with 116,639 jobs existing in the national economy); a storage facility clerk (This is light, unskilled work with 227,000 jobs existing in the national economy); or a carton packer (This is light, unskilled work with 275,000 jobs existing in the national economy).

(13)    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

(Tr. 22-23).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept

-4-

as adequate to support a conclusion." Richardson, 402 U.S. at 390.  Such evidence is generally

equated with the amount of evidence necessary to avoid a directed verdict.  Shively v. Heckler, 739

F.2d 987, 989 (4th Cir. 1984).   The Court's scope of review is specific and narrow.   It does not

conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be

upheld, even if the Court disagrees, so long as it is supported by substantial evidence.  42 U.S.C.

§ 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established.  Five

questions are to be asked sequentially during the course of a disability determination.  20 C.F.R. §§

404.1520, 1520a (1988).  An ALJ must consider (1) whether the claimant is engaged in substantial

gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an

impairment which equals a condition contained within the Social Security Administration's official

listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an

impairment which prevents past relevant work and (5) whether the claimant's impairments prevent

him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by

the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability

to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock,

483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary.  20 C.F.R.

§ 404.1503(a).  Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).  An ALJ's factual determinations must

be upheld if supported by substantial evidence and proper legal standards were applied.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82-62.  The claimant bears the burden of establishing his inability to work within the meaning of the Social Security Act.  42 U.S.C. § 423 (d)(5).  He must make a prima facie showing of disability by showing he was unable to return to his past relevant work.  Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.  Id. at 191.

## IV.  MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case.

On July 15, 2002, plaintiff presented himself to the James Island Medical Center after injuring himself in a fall from several feet in the air to the concrete floor.  Plaintiff complained of pain in his back, right hip, and left elbow.  Plaintiff was assessed with a contusion of his low back and right elbow, and referred to physical therapy (Tr. 124).    X-rays of his right rib cage revealed no

evidence or fracture or other abnormality (Tr. 123). On July 17, 2002, plaintiff was seen again with swelling at the area of L1-L5, and muscle spasms in the T3-T7 area. Plaintiff was assessed with soft tissue injuries to the upper and lower back. (Tr. 122).

Plaintiff subsequently received treatment from Craig Harris, M.D., a primary care physician from July 22, 2002, through November 15, 2002. Plaintiff saw Dr. Harris on July 24, 2002, complaining of headaches, thoracic pain, neck pain, lower back pain. Dr. Harris' physical examination revealed significant suboccipital tenderness on the left side extending down into the paracervical areas C2-C3, C4, C5, and C6. Plaintiff was noted as being tender to palpation in the midline thoracic area and had significant trigger point noted on palpation in the right rhomboid minor muscle group. Plaintiff was also noted as being very tender to palpation in the lower lumbar midline and also showed lower facet area tenderness to palpation; especially right sided L4-5 and left sided L5-S1. Plaintiff was given several facet blocks, midline trigger point injection and electrical muscle stimulations and moist heat. (Tr. 174). Dr. Harris started plaintiff on a course of physical therapy, prescribed medications for inflammation, pain, and muscle spasm, and administered trigger point injections into plaintiff's back (Tr. 129-184). Plaintiff returned to Dr. Harris numerous times between July 29, 2002, and October 31, 2002, for physical therapeutics. (Tr. 129-184). An MRI of the lumbar spine on August 23, 2002, revealed a left lateral protrusion/herniation displacing the left L3 nerve root outside the neural foramen. The MRI revealed right sided spurring at L5-S1, and decreased disc signal with moderate to severe right neural foraminal narrowing. (Tr. 157).

On September 11, 2002, Andrew E. Greer, M.D., examined plaintiff, diagnosed lumbar facet arthropathy and lumbar radiculopathy, and administered medial branch blocks of facet joints, L4-5

and S1 bilaterally (Tr. 189-190). On September 30, 2002, Dr. Greer administered a transforaminal epidural injection at L5-S1 and S1 (Tr. 186-187).

On November 14, 2002, Joseph M. Marzluff, M.D., a neurosurgeon, saw plaintiff on referral from Dr. Harris for his continued back pain with radiation into the legs and a feeling of numbness and tingling in his legs. It was noted that plaintiff reported a couple of episodes where he had fallen because his legs gave out on him.  On examination, Dr. Matzluff noted that plaintiff was significantly obese, his straight leg raising was negative, and he had no motor, sensory or reflex abnormalities. Dr. Marzluff stated that plaintiff's MRI revealed "degenerative changes, but no significant stenosis nor any evidence of disc herniation."  He diagnosed symptoms of lumbar nerve root irritation and recommended that plaintiff undergo a lumbar myelogram (Tr. 131).

On November 14, 2002, a lumbar myelogram revealed mild disc bulging at L3-4 and L5-S1 with no frank disc protrusion (Tr. 195).

J. Edward Nolan, M.D., a pain management specialist, evaluated plaintiff on January 7, 2003 on referral from Dr. Marzluff. Dr. Nolan noted that plaintiff stated his condition increases with walking, driving, bending, sitting, lying and is decreased by medication and therapy. Plaintiff reported that his pain has decreased his ability to participate in physical activities by 90-100% and social activities by 70-80%. Upon physical examination, Dr. Nolan found that plaintiff had a limited range of motion with severe paraspinous muscular tenderness bilaterally. Dr. Nolan's diagnosis after physical examination was lumbar displaced disc disease. On January 21, 2003, plaintiff presented to Dr. Nolan for a facet joint injection  Dr. Nolan treated plaintiff between January 21, 2003, and May 14, 2004.  Dr. Nolan treated plaintiff with right lumbar injections due to complaints of continued and constant sharp pains to the lower back, right hip, and right leg regions  due to severe

lumbar paraspinous musculature pain diagnoses as lumbar displaced disc disease and lumbar facet arthropathy. (Tr. 249). Dr. Nolan continued to treat plaintiff's pain complaints with a course of medications, physical therapy, epidural steroid and facet joint injections (Tr. 237-254).

On May 7, 2003, Cashton B. Spivey, Ph.D., saw plaintiff for a psychological evaluation on referral from Dr. Nolan. On the Burns Depression Checklist, plaintiff obtained a score of 52 out of a possible 100, which fell in the severe range for his report of subjective depression. On the Burns Anxiety Inventory, plaintiff obtained a score of 71 out of a possible 100 points, which fell in the severe to extreme range for his report of anxiety and tension. Dr. Spivey diagnosed generalized anxiety disorder, depressive disorder, and possible panic disorder, and recommended that plaintiff see a psychiatrist for medication management (Tr. 211-213). Dr. Spivey continued seeing plaintiff on followup visits from July 23, 2003 through October 13, 2003 (Tr. 218-224).

On June 6, 2003, David J. Funsch, M.D., saw plaintiff for a psychiatric evaluation. Dr. Funsch diagnosed major depression, single episode, moderate, generalized anxiety disorder, and panic disorder (Tr. 264-266). From June 27, 2003, through March 29, 2004, Dr. Funsch managed plaintiff's medications (Tr. 256-263).

On June 10, 2003, a non-examining State agency physician performed a physical residual functional capacity assessment on plaintiff and found plaintiff could perform light work (Tr. 229-236). The physician noted that he reviewed Dr. Nolan's treatment notes and the November 2002 Mylegram report (Tr. 230-231).

On June 25, 2003, Istvan Takacs, M.D., a neurosurgeon, saw plaintiff on referral from Dr. Nolan. Dr. Takacs found plaintiff had a "benign neurological exam" with no signs of disc herniation. He opined that plaintiff may have some degree of spondylolisthesis fracture but lacking

any films, he could not verify that opinion. Dr. Takacs opined that plaintiff did not need a morphine pump or spinal cord stimulator and that his pain would decrease significantly with significant weight loss, i.e., in excess of 50 pounds (Tr.244-245).

On August 5, 2003, Kerri A. Kolehma, M.D., a pain and rehabilitation specialist, saw plaintiff for an impairment rating at the request of Dr. Nolan. Dr. Kolehma reviewed Dr. Nolan's treatment notes, Dr. Marzluff's November 2002 report, and a lumbar myelogram dated November 14, 2002. From the review of the lumbar myelogram, Dr. Kolehma found mild disc bulge at L3-4 and L5-S1, with no evidence of asymmetry or protrusion. Upon physical examination it was noted that plaintiff weighed 325 pounds and was 5'10" in height. Further, spasms were present in the lumbar paraspoinals. Plaintiff had to stop the flexion or range of motion test due to pain. Dr. Kolehma diagnosed plaintiff with chronic low back pain and right leg pain, obesity, lumbar muscle spasms and right sacroiliac joint dysfunction. Dr. Kolehma opined that plaintiff's"subjective complaints outweigh[ed] objective data" and assessed plaintiff with a seven percent impairment of the lumbar spine and five percent of the whole person. Dr. Kolehma noted from the examination that plaintiff had right sacroillac joint dysfunction, and myofascial pain syndrome. Plaintiff's lumbar range of motion was extremely altered from normal, even more than would be seen with his lumbar spasms. Dr. Kolehma recommended weight loss and continued follow-up by chronic pain specialist for SI joint, trigger point and epidural injections. (Tr. 127-128).

On August 21, 2003, Dr. Harris noted that plaintiff's disc disease was considered permanent and serious enough to constitute a hindrance or obstacle to employment and noted that his preexisting condition of facet arthropathy with narrowing and disc disease was exacerbated by his fall. Dr. Harris also noted plaintiff had left lateral herniation at L3-4 with displacement of the left

LS nerve root. Dr. Harris concluded that plaintiff's back problems resulted in substantially greater loss of work time, substantially greater permanent disability and medical costs, and was permanent and serious enough to constitute a hindrance or obstacle to employment (Tr. 118-119).

On September 9, 2003, Dr. Nolan assessed plaintiff with the following restrictions, "sedentary work for a 4 hour workday for two months, 6 hour workday for two months, and an eight hour workday for two months. Lifting restrictions are at 10 lbs" (Tr. 242).

On December 23, 2003, Dr. Nolan opined that plaintiff could work for two hours a day (sitting less than 30 minutes at a time, for less than two hours in a workday; standing less than 30 minutes at a time, for less than one hour in a workday; and walking less than 30 minutes at a time, for less than one hour in a workday), could lift and/or carry up to 5-10 pounds occasionally, could use his hands for repetitive activities such as simple grasping and fine manipulation, could not use his legs and feet for repetitive activities such as pushing leg controls, and was unable to bend, crawl, reach, squat, and climb (Tr. 241).

On February 27, 2004, Enola Davis Bluemel, M.Ed. evaluated plaintiff for a vocational evaluation and report on his wage earning capacity. She noted that plaintiff used to be physically active and liked to go fishing, work on cars, perform yard work, and practice baseball with his son. Plaintiff could not use his boat anymore and had put it up for sale. However, she noted that plaintiff stated he attempts to fish from the bank sometime, tries to play ball with his son but only for a short period of time, and limits his car care activities to simple things such as checking the oil. He hires someone else to cut the grass, as the riding lawnmower also increases his pain level. She also noted that plaintiff advised that he continues to have neck and thoracic pain, as well as low back pain that shoots across his back and down the right leg. The right leg will often collapse without warning and

he now uses a cane for support. Plaintiff advised that he could stand for 15 to 20 minutes without support and 20-25 minutes with support; he can walk for 15 minutes before having to sit down, and can sit for 30-35 minutes before he has to shift position and stand up. Plaintiff describes his back pain as constant, although varying in intensity. She noted that plaintiff currently uses a TNS unit as prescribed twice a day for 15 minutes. Plaintiff sated that his sleep patterns are erratic causing him to only get 3-4 hours sleep at night. Plaintiff stated that he can get more rest if he takes sleeping medications but he feels drunk and dizzy in the morning when he takes it. After a review of the medical records and labor market, she concluded that:

> Due to the residual limitations resulting from the work-related injury, he has sustained a significant loss of access to the labor market requiring transferable skills. . . Mr. Smith is prohibited by his attending physician from lifting/carrying more than 10 pounds. With diagnosed asthma, he is further restricted from work areas that would aggravate this condition. Mr. Smith is on multiple medications for pain, for sleep disturbances, and for symptoms of anxiety and depression. Some of these medications for pain, for sleep disturbances, and for symptoms of anxiety and depression. Some of these medications carry warning labels regarding their usage around equipment and when driving. His reports of daily drowsiness and fatigue provide ample evidence that this would problematic for him should he attempt to enter the workplace.

> Employers expect for their employees to provide a day's productivity in exchange for a day's wage. An employee who must be granted accommodation regarding the number of hours worked, given special allowances concerning standing, sitting, walking or taking frequent breaks and/or naps is not highly productive. An employee who is groggy and unable to pay attention to detail and to his surroundings is not only less productive, but represents a potential hazard to himself and co-workers.. . .

> However, Mr. Smith is of average intelligence, and has adequate educational levels to be considered training for new occupations. Hopefully, in the future the medical community will be able to provide better solutions to his chronic pain problems and resulting

> disability. Unfortunately, until that occurs, a real attainable and sustainable job base that could be considered appropriate for Mr. Smith does not exist in either the local economy or in the economy at large.
>
> I hope you have found this information helpful. Mr. Smith was cooperative and helpful during out interview, answering all questions readily, and attempting all tasks presented to him.

(Tr. 108-109).

Plaintiff was examined by Dr. Nolan on March 2, 2004. Dr. Nolan noted from his physical examination that plaintiff "has excruciating pain in the cervical paraspinous musculature midline into the bilateral trapezius muscles with the left greater than the right and severe bilateral lumbar paraspinous musculature in bandlike distribution with extension and rotation of the spine. There is also severe right lumbar radiculitis in the S1 nerve distribution and moderate left cervical radiculitis." (Tr. 238). Dr. Nolan assessed "lumbar facet arthropathy and cervical radiculitis cervical and lumbar pain." (Tr. 238).

In a letter dated May 14, 2004, Dr. Nolan opined that plaintiff is in a severe amount of pain and is suffering from discogentic lumbar pain, lumbar facet arthropathy and cervical facet arthropathy. Dr. Nolan states that "these conditions are very painful and are consistent with injuries that can occur during a fall. Mr. Smith's pain has been non-responsive to the injections he has received in the past. There is not a treatment plan that will effectively decrease his pain significantly." (Tr. 237). Dr. Nolan opined that plaintiff is limited to lifting a maximum of 10lbs and must be able to change positions regularly. Dr. Nolan states that "these position changes are from sitting, standing, reclining, and lying down. With this in mind, Mr. Smith would be unable to obtain or even maintain any type of gainful employment." Dr. Nolan stated that plaintiff would have to stay

-13-

on his current treatment plan to help function at the same level that he is at now and to maintain his current pain level. Dr. Nolan opines that without his current treatment plan his pain would likely become excruciating and even more debilitating. Dr. Nolan stated that his current treatment plan consists of one injection every two to four months, pain medications, and physical therapy-aquatics therapy. (Tr. 237).

## V.  ARGUMENTS

### A.  Opinion of Treating Physician

Plaintiff argues that the ALJ improperly discounted the opinions of his two treating physicians, Dr. Nolan and Dr. Harris. Dr. Nolan treated plaintiff for over two years and Dr. Harris saw him for treatment 27 times between July and November 2002. Plaintiff asserts that both of his physicians opine that he is disabled and prevented from working at a substantially gainful level due to his spinal disorder. Plaintiff contends that both opinions are based upon objective radiographic evidence and his subjective complaints are well-supported by the record as a whole.

Plaintiff asserts that Dr. Harris provided one of the consultative opinions as well as a report dated August 21, 2003, which the ALJ rejected on the basis of a "time gap" between treatment. However, plaintiff contends that the treatment note immediately preceding Dr. Harris's August 21 opinion is dated August 5, 2003, by Dr. Kolema who examined him at the request of Dr. Nolan. Plaintiff argues that the ALJ clearly erred in giving greatest weight to certain portions of the DDS medical consultants opinions and disregarding the opinions that are actually entitled to controlling weight.

-14-

The Commissioner argues that the ALJ properly rejected the opinions of Drs. Harris and Nolan based on substantial evidence of record. Specifically, the Commissioner argues that the "substantial evidence consists of the reports of the two neurosurgeons, Drs. Marzluff and Takacs, who found essentially normal neurological findings; a myelogram, which revealed only mild disc bulging at L3-4 and L5-S1; Dr. Kolehma's findings that plaintiff's complaints outweighed the objective evidence and a whole person impairment rating of only five percent; and, assessments by nonexamining state agency physicians, who opined that plaintiff could perform light work after reviewing the above discussed evidence." (Defendant's brief).

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with the other evidence in the record. 20 C.F.R. § 404.1527(d) (1997); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.); Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983)(a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."). Objective medical facts and the opinions and diagnoses of the treating and examining doctors constitute a major part of the proof to be considered in a disability case and may not be discounted by the ALJ. See, e.g., Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.1987) (holding that treating physician's opinion is entitled to great weight if not contradicted by persuasive evidence). When evaluating the opinion of a treating physician, the ALJ must consider whether the opinion should be given controlling weight. See 20 C.F.R. § 404.1527(d)(2). Controlling weight is afforded where the opinion (1) is from a treating source; (2)

-15-

is a medical opinion concerning the nature and severity of the plaintiff's impairment; and (3) is well-supported by medically acceptable clinical and laboratory diagnostic techniques. *See* S.S.R. 96-2p; 20 C.F.R. § 416.927 . "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, supra.

A review of the ALJ's decision reveals he found the following with regards to the treating physicians' opinions:

> The undersigned rejects Dr. Harris and Dr. Nolan's opinions that the claimant is not capable of performing even a full range of sedentary work....
>
> More importantly, Dr. Harris' opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive. While his own examinations fail to place specific restrictions on the claimant's physical activity, Dr. Harris limits the claimant to less than a full range of sedentary work. In a letter dated September 10, 2002, Dr. Harris reported that the claimant had done well with electrical muscle stimulation, ultrasound therapy, myofascial release and spinal manipulation, along with focal steroid injections. Although there are no treatment notes after September 2002, in August 2003, Dr. Harris reported the claimant's injury on July 15, 2002, aggravated and combined with these conditions resulting in substantially greater lost time from work, permanent disability, and medical costs which were serious enough to constitute a hindrance or obstacle to employment. This opinion is given little weight in light of the gap in time between the last treatment note and this opinion. Furthermore, when the claimant presented to Dr. Nolan in September 2003, who had been treating him on a regular basis at that time, Dr. Nolan opined that the claimant was restricted to sedentary work for 4 hours a day for 2 months, then 6 hours a day for 2 months, and then 8 hours for 2 months. He was further restricted from lifting more than 10 pounds. Contrasting Dr. Nolan's opinion with the August 2003, opinion of Dr. Harris apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this

-16-

decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

With regard to Dr. Nolan's opinion dated May 14, 2004 limiting the claimant to lifting 10 pounds, changing positions frequently, and opining that the claimant was unable to obtain and maintain gainful employment, this opinion is also given less than controlling weight as it conflicts with Dr. Nolan's opinion from August 2003, that the claimant could gradually return to sedentary work and as it appears that Dr. Nolan also relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.

Regarding the medical opinions of the DDS medical consultants, the undersigned agrees with their general opinion regarding the claimant's ability to perform light work activity and with their opinion the claimant's mental impairments were not severe. While the DDS medical consultants and the undersigned disagreed on further limitations, the undersigned affords the DDS general opinions significant weight as their opinions also support a finding of "not disabled."

Having considered all of the above, the undersigned finds that the claimant's allegations of a total inability to work are exaggerated and unsupported by the medical evidence of record.

The undersigned notes that, while Enola Blumel, a vocational consultant, has made what not only a vocational, but also a medical opinion regarding the claimant's functional limitations, she is not considered an "acceptable medical source". . .

(Tr. 17-18).

As stated above, Drs. Harris and Nolan, both treating physicians, reported that plaintiff was unable to work. The ALJ rejected the treating physicians' opinions relying on the one time evaluations of non-treating physicians. The ALJ relied on the report of Dr. Takacs, who found plaintiff's neurological examination was benign and that he believed if plaintiff lost 50 pounds, his pain would decrease. However, Dr. Takacs also stated that plaintiff may have some degree of

spondylolistthesis and/ or a compression fracture that would have to be verified by x-rays. The ALJ also seems to rely on the statement in the report of Dr. Kolehma that plaintiff's subjective complaints outweighed objective data. However, in reviewing the whole report, Dr. Kolehma also opined that plaintiff had chronic low back pain and right leg pain, obesity, lumbar muscle spasms and right sacroiliac joint dysfunction. Dr. Kolehma assessed plaintiff with a 5% impairment of the whole person, which she states converted to 7% of the lumbar spine. Dr. Kolehma recommended weight loss and follow-up with a pain specialist for SI joint, trigger point, and epidural injections. The ALJ also appears to rely on the one time evaluation of Dr. Marzluff who noted that plaintiff was a significantly obese man with an MRI revealing degenerative changes but no evidence of stenosis or disc herniation. However, a review of the radiologist report dated August 23, 2002, from the MRI that Dr. Harris relied to find disc herniation concluded that "L3-4 shows a left lateral protrusion/herniation displacing the left L3 nerve root outside the neural foramen." (Tr. 157). Thus, it is unclear what MRI report Dr. Marzluff was referring. In any event, Dr. Marzluff ordered a myelogram which was performed on November 14, 2002, from which the radiologist concluded a "mild disc bulging at L3-4 and L5-S1 as described. No frank disc protrusion is seen." (Tr. 195).

As previously discussed under the medical reports section of this report and recommendation, the two treating physicians opined that plaintiff was not able to work. Dr. Harris completed a questionnaire on August 21, 2003, in which he concluded that plaintiff's disc disease was considered permanent and serious enough to constitute a hindrance or obstacle to employment. Further, Dr. Harris opined that plaintiff would lose a substantial amount of time from work and was permanently disabled as a result. (Tr. 117-119). Dr. Nolan concluded in a report dated May 14, 2004, that plaintiff is in a severe amount of pain and is suffering from severe discogenic lumbar pain, lumbar facet

arthropathy and cervical facet arthropathy. Dr. Nolan stated that these conditions are painful. Dr. Nolan found that plaintiff had been non-responsive to the injections he had received, that plaintiff would be limited to lifting a maximum of 10 lbs., and that plaintiff must be able to change positions regularly–i.e. siting, standing, reclining, and lying down. Thus, Dr. Nolan concluded that plaintiff would be unable to obtain or even maintain any type of gainful employment. (Tr. 237).[1] Despite these opinions by treating physicians, the ALJ found that plaintiff was capable of performing light work with restrictions.

The undersigned does not agree with the Commissioner's argument that the ALJ properly rejected the opinions of Drs. Harris and Nolan.

A review of the medical records reveals that Drs. Marzluff, Takacs and Kolehma all noted at least one of the following: lumbar nerve root irritation (Tr. 131); tender to palpatation over the paraspinal musculature at L5-S1 level bilaterally (Tr. 245); obesity (Tr. 245, 131, 126); and lumbar muscle spasms, decreased sensation, leg pain, right sacroiliac joint dysfunction, lumbar range of motion extremely altered from normal, and myofascial pain syndrome (Tr. 126). However, none of these one time evaluating physicians stated that plaintiff could perform light work or discussed restrictions. In fact, Dr. Kolehma recommended follow-up with chronic pain specialist for S1 joint, trigger point and epidural injections. None of the opinions that the Commissioner relies establishes that Drs. Harris and Nolan's opinions should be entirely discredited.

---

[1] Additionally, plaintiff was evaluated by Enola Davis Bluemel for a vocational evaluation and after reviewing the medical reports and labor market, she concluded that  a real attainable and sustainable  job base that could be considered appropriate for Mr. Smith does not exist in either the local economy or in the economy at large.

The undersigned agrees that to the extent there was a conflict between various physician's opinions in the record, the ALJ's duty is to weigh the evidence and decide the case accordingly. However, even where the treating physician's opinion is not entitled to "controlling weight" because it is inconsistent with other substantial evidence, the treating physician's opinion should not be completely rejected. A treating physician's opinion, even when contradicted by other evidence, is entitled to deference and must be weighed based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical questions at issue; and (6) other factors which tend to support or contradict the opinion. See 20 C.F.R. 416.927. Both Dr. Nolan and Dr. Harris treated plaintiff for a significant period of time and both opined that plaintiff's spinal disorder was disabling. Both opinions were based on physical examinations, radiographic evidence, and subjective complaints as set out under the medical section of this report.

In this case, the undersigned  finds that the ALJ wholly rejected Drs. Harris and Nolan's opinions after deciding not to give them controlling weight. Accordingly, the ALJ's decision to completely discredit Drs. Harris and Nolan's medical opinions and conclusions was not supported by substantial evidence and a remand is necessary for a proper evaluation of these opinions.

## B. Credibility

Plaintiff argues that the ALJ conducted a flawed credibility analysis. The Commissioner argues that the ALJ properly evaluated the credibility of plaintiff's subjective allegations.

-20-

In assessing complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists,  (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record.  See Craig v. Chater, 76 F.3d 585 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994).

Based on plaintiff's testimony, he has a sharp pain that runs across his lower back, into his right leg which causes his leg to "just give out." (Tr. 306). Plaintiff testified that he has pain in his right leg and has problems with his right leg falling asleep. Plaintiff testified that he has had pool therapy, simulators, and has an electric simulator at home that he uses about every day. (Tr. 308). Plaintiff testified that he can stand between 20 and 30 minutes before his leg starts shooting pain and going numb, can sit between 30 minutes to an hour, depending on his position, and that his doctor told him not to lift over ten pounds. If he lifts more than ten pounds, he gets a sharp pain down his leg and across his back.  Plaintiff testified that he may play computer games with his son in the house and may sit on the porch and watch his son play outside. Plaintiff testified that his mother does the grocery shopping, he drives his son to school, and may drive to his brother's house which is about ten miles. (Tr. 312-313).  Based on statements in the medical and vocational reports, plaintiff stated that he is able to fish from the bank a little but has put his boat up for sale because he was no longer able to use the boat or fish for any extended period of time. Plaintiff used to do his yard work but now hires someone to cut the grass and that his mother purchases groceries for him and his son. Other than these activities, plaintiff just alternates between sitting, lying, standing, elevating legs, etc.

In this case, it is undisputed that plaintiff has a bulging disc at L3-4 and L5-S1. The ALJ found that plaintiff's chronic low back pain and right leg pain are considered severe impairments. These conditions are of the nature and type that can produce significant pain as found by his treating physicians. Nonetheless, the ALJ discredited plaintiff's claims of severe back pain and his limitations as a result. While it appears the ALJ relied on a portion of the report of Dr. Kohelma that plaintiff's subjective complaints outweighed objective data, he did not rely on the portion that found that plaintiff demonstrated lumbar muscle spasms, right leg pain, right sacroiliac joint dysfunction, and obesity and her conclusion that upon examination he had evidence of right sacroiliac joint dysfunction, and myofascial pain syndrome. She also found that his lumbar range of motion was extremely altered from normal. Further, plaintiff's limited activities does not discredit plaintiff's subjective claims of later pain.

Based on the opinions of two treating physicians that plaintiff is disabled from gainful employment due to his limitations, the fact that plaintiff continues to undergo treatments as advised, has undergone numerous procedures attempting to alleviate his pain, and plaintiff's testimony as to his pain and limitations that is supported by several medical records, it is concluded that the ALJ erred in not finding plaintiff's subjective complaints credible. The medical evidence supports the plaintiff's allegations of limitations of activities and the allegations of pain based on the reports of his two treating physicians and the objective medical evidence. The ALJ's determination is contrary to the Fourth Circuit's clear instructions that a claimant "need only show objective medical evidence of some condition that could reasonably be expected to produce the pain alleged, not objective medical evidence of the pain itself." Thompson v. Sullivan, 980 F.2d 280, 282 (4th Cir.1992) (quoting Jenkins v. Sullivan, 906 F.2d 107, 109 (4th Cir.1990)); see also Myers v. Califano, 611 F.2d

980, 983 (4th Cir.1980); <u>Foster v. Heckler</u>, 780 F.2d 1125, 1129 (4th Cir.1986); <u>Walker v. Bowen</u>, 889 F.2d 47, 49 (4th Cir.1989). For these reasons, the undersigned concludes that the ALJ's reasons for discrediting plaintiff's subjective pain are not supported by substantial evidence in the record. Based upon the foregoing, the undersigned concludes that a remand is warranted for a proper credibility analysis.

### C.  Obesity

The plaintiff next argues that the ALJ erred in failing to properly assess the impact of his obesity upon his other severe impairments and failed to assess the combined effect upon the plaintiff's ability to perform substantial gainful employment.  The medical records clearly document that he has been diagnosed by his doctors as significantly obese and grossly overweight.  The listing for obesity was eliminated in 1999 but Social Security issued Ruling 00-3p on the evaluation of obesity. The Ruling states that obesity must be considered in determining disability and Residual Functional Capacity. The Ruling states that a person may be found to equal the Listings due to obesity if it markedly limits the claimant's ability to walk and stand. The undersigned finds that the ALJ failed to properly assess the impact of the plaintiff's obesity upon his other severe impairments and failed to assess the combined effect upon the plaintiff's ability to perform substantial gainful employment.  Accordingly, a remand is warranted for consideration of plaintiff's obesity combined with his back impairment and depression.

## VI.  CONCLUSION

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is,

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 3, 2006
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

-24-

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
### &
### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, **but not** thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503
